## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 06 2015, 9:43 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Theodore L. Stacy
Valparaiso, Indiana

ATTORNEY FOR APPELLEE

Rebecca H. Fischer
Laderer & Fischer, P.C.
South Bend, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Kelli Alvarez
f/k/a Kelli Galanos,

*Appellant-Defendant,*

v.

Horizon Bank, N.A.,

*Appellee-Plaintiff.*

April 6, 2015

Court of Appeals Case No.
46A03-1404-CC-129

Appeal from the Laporte Superior Court; The Honorable Jennifer L. Koethe, Judge;
46D03-1205-CC-401

**May, Judge.**

[1] Kelli Alvarez f/k/a Kelli Galanos (Kelli) appeals judgment in favor of Horizon Bank, N.A. (Horizon). She presents three issues for our review, which we consolidate and restate as:

[2] 1. Whether the court erred when it denied Kelli's Motion to Dismiss based on Trial Rule 12(B)(1); and

[3] 2. Whether the trial court abused its discretion when it entered summary judgment in favor of Horizon regarding Horizon's original claim.

## Facts and Procedural History[1]

[4] Kelli was married to George Galanos (George). Their divorce was final on May 18, 2011. As part of the divorce decree, George was awarded "all rights, title, interest, and exclusive use and possession" of all four properties the couple owned during their marriage. (App. at 56.) For each property, the court ordered, "[George] shall be responsible for and pay the outstanding mortgage(s) and utilities billed to the premises." (*Id*.) Kelli was ordered to "execute and deliver to [George] a Quit Claim Deed" to each property within thirty days of the divorce decree. (*Id*.) One of those properties, located at 1915 Redwood Lane (Redwood Property) in Munster, Indiana, is the subject of the instant matter.

---

[1] We held oral argument on this case on February 27, 2015, as part of the Women's Bench Bar Retreat at Culver Cove in Culver, Indiana. We thank the Women's Bench Bar for their hospitality and counsel for their presentations.

[5] During the divorce proceedings, George was also in the midst of bankruptcy proceedings, and the divorce court order noted George testified "he was confident that he would be able to pay the installment debt owed against the four properties through his bankruptcy plan. Additionally, [George] testified that he would sell the properties if this was not possible for any unforseen [sic] reason." (*Id.* at 55.) One of the creditors in the bankruptcy proceedings was Horizon, which held a second mortgage on the Redwood Property. Horizon's mortgage was created to secure a $150,000 promissory note.

[6] On May 7, 2012, the bankruptcy court issued an "Agreed Order for Relief of Status as Co-Debtor" which stated:

> 1. On January 19, 2010, [George] filed a Bankruptcy Petition under Chapter 13 of the United States Bankruptcy Code.
>
> 2. The jurisdiction of this proceeding is invoked pursuant to 28 U.S.C. § 151 and 1334. [sic]
>
> 3. On or about February 7, 2007, [Kelli] executed and delivered to Horizon a promissory note in the original principal amount of $150,000.00 (the "Note").
>
> 4. In order to secure payment of the Note and other obligations contained in the Note, [Kelli] and [George] executed and delivered to Horizon on February 7, 2007 a second mortgage with respect to [Redwood Property].
>
> 5. As of September 30, 2009 the total amount owing on the Note was principal of $152,975.68 with interest accruing after that date at the rate of $38.71 per diem. The Note is in default for the June 2009 payment and payments due thereafter.
>
> 6. Horizon wishes to file an action against [Kelli] to collect the Note, and has agreed to the entry of an order stripping its lien on [Redwood Property], in Adversary Proceeding No. 12-02008 filed by

[George], effective upon [George's] completion of the Chapter 13 plan and the entry of discharge.

(*Id*. at 20.)

[7] On May 30, 2012, Horizon filed the cause against Kelli that underlies this appeal, a "Complaint on Promissory Note" alleging Kelli was "in default under the terms of the [Promissory Note] in that she has failed to make the payment due for June 2009 or any month after." (*Id*. at 16.) Horizon noted in its complaint the bankruptcy court's order allowing Horizon to file a claim against Kelli, and asked for a judgment against Kelli of "$190,497.52, together with accrued interest after May 11, 2012, plus Horizon's cost of collection, including reasonable attorney fees, the costs of this action and all other just and proper relief in the premises." (*Id*. at 17.)

[8] On August 20, 2012, Horizon filed a Motion for Summary Judgment, and the trial court set a hearing on the matter for October 29, 2012. On August 24, 2012, Kelli filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction. Horizon responded, and on November 1, 2012, the trial court denied Kelli's Motion to Dismiss.

[9] On December 4, Kelli filed her response to Horizon's Motion for Summary Judgment and added a counterclaim alleging constructive fraud. Horizon moved to dismiss Kelli's counterclaim on December 20, and on December 28, the trial court entered final judgment in favor of Horizon without addressing Kelli's counterclaim.

On January 10, 2013, Kelli responded to Horizon's motion to dismiss her counterclaim. On January 28, Kelli filed a motion to correct error regarding the trial court's December 28 judgment. After a hearing, the trial court denied Kelli's motion to correct error and decided, based on the pleadings, that Horizon's motion to dismiss would be more properly considered a motion for summary judgment. It directed the parties to designate evidentiary materials in support of their arguments.

Kelli appealed the denial of her motion to correct error, and we dismissed her appeal as untimely. *See Alvarez v. Horizon Bank, N.A.*, 46A03-1304-CC-155 (Ind. Ct. App. December 11, 2013) (Alvarez's appeal was untimely because she did not appeal a final judgment; Judge May's concurrence reasoned the appeal should be dismissed because, while it was interlocutory in nature because it involved the payment of money, Alvarez did not file her appeal within thirty days of the summary judgment for Horizon). On January 8, 2014, the trial court entered summary judgment for Horizon on Kelli's counterclaim.

## Discussion and Decision

### *1.    Kelli's Motion to Dismiss*

The standard for reviewing a ruling on a motion to dismiss for lack of subject matter jurisdiction depends on whether the trial court resolved disputed facts and, if so, whether it conducted an evidentiary hearing or ruled on a paper record. *Johnson v. Patriotic Fireworks, Inc*. 871 N.E.2d 989, 992 (Ind. Ct. App. 1997). If the facts before the trial court are not disputed, the question of subject

matter jurisdiction is one of law that we review *de novo*. *Id.* Likewise, if the facts are disputed but the trial court rules on a paper record, the standard of review is also *de novo*. *Id.*

[13]     In her Motion to Dismiss, Kelli argued:

> 1.      That Kelli was married to [George] during the time the alleged promissory note upon which [Horizon] now sues was allegedly executed.
>
> 2.      That by its own terms, the alleged promissory note was secured by a mortgage lien on [Redwood Property].
>
> 3.      That after making the alleged promissory note, Kelli and George's marriage was dissolved pursuant to court order entered in cause number 46D02-0911-DR-373, on May 18, 2011, by the Special Judge then sitting in LaPorte Superior Court Number 2. The decree is attached hereto as "Defendant 1". [sic]
>
> 4.      That the dissolution decree assigned the rights and duties of the parties as well as divided all marital property including the rights to the real estate serving as security interest for the alleged promissory note; and, also assigned the obligations on that alleged debt upon which Horizon now sues.
>
> 5.      That the dissolution decree ordered Kelli to assign to George all of her rights in the real property that is cited as security for the alleged promissory note (as that real property is identified within the alleged note, 1915 Redwood Lane) in exchange for George's assumption of debt on that property and for all other consideration and obligations contemplated and ordered in the decree.
>
> 6.      That Horizon is well aware of the dissolution of the marriage of Kelli and George, having litigated the issue of relief from stay with George regarding the alleged promissory note and its alleged security known as 1915 Redwood Lane in the bankruptcy court.
>
> 7.      That Horizon and George entered into an agreed order ("agreed order") regarding the alleged promissory note secured by 1915 Redwood Lane as evidenced by the exhibits attached to Horizon's complaint.

8.     That Kelli was not a party to Horizon and George's agreement or their agreed order.

9.     That the agreed order entered into between George and Horizon in the bankruptcy court releases Horizon's mortgage lien on [Redwood Property], in exchange for George consenting to Horizon's pursuit of Kelli for payment of the alleged promissory note secured by the same real estate Kelli was ordered by the dissolution court to convey to George who was ordered to assume the debt thereon.

10.     That the agreed order did not create in Horizon any new rights or remedies superior to those previously decided by the dissolution court, but merely released Horizon from the automatic stay against prosecution of its alleged interests regarding the alleged promissory note.

11.     That the exchange of interests between George and Horizon via their agreed order did not modify the dissolution decree containing and ordering the property settlement between George and Kelli.

12.     That Horizon is, however, attempting to use its agreement with George to work a modification of the marital dissolution order, specifically the former real property and the debt attaching to it, without Kelli's consent; and, more importantly, without the knowledge or consent of the dissolution court.

13.     That Horizon's complaint in this action seeks to convert its agreement with George into an enforceable right of collection against Kelli, which is nothing more than a collateral attack on the marital dissolution order and its property settlement.

(App. at 41-44.)

In support of her argument for dismissal, Kelli cited *Fackler v. Powell*, 839 N.E.2d 165 (Ind. 2005). In *Fackler*, the parties were divorced, and as part of the dissolution, Powell, the husband, was to assign payment of a promissory note and mortgage to Fackler, the wife. Fackler sued Powell, contending she was owed a lump sum of $103,000.00. Powell moved to dismiss the action, arguing the dissolution court had exclusive jurisdiction over the matter. The trial court

disagreed, and granted summary judgment in favor of Fackler. On appeal we agreed the trial court had jurisdiction over the matter.

[15] Our Indiana Supreme Court reversed, holding the property settlement was within the exclusive jurisdiction of the dissolution court. It noted:

> In her brief and in oral argument, Fackler maintained that her claim of entitlement to the $103,000 was brought both against Powell and Powell's "Living Trust, two separate legal entities. The Family Court which issued the [dissolution decree] would not have had personal jurisdiction or subject matter jurisdiction over the non-party to the divorce action, that being the Living Trust." Appellant's Br. in Resp. to Pet. to Trans. at 9. Fackler did not present any authority for this proposition in her brief; at oral argument, she cited *Miller v. Partridge*, 734 N.E.2d 1061, 1064 (Ind. Ct. App. 2000), and *Kiltz v. Kiltz*, 708 N.E.2d 600, 602 (Ind. Ct. App. 1999), *transfer denied*, 726 N.E.2d 302. These cases both address the question of whether a child designated in a property settlement agreement as the beneficiary of a parent's life insurance policy is a third-party beneficiary of the settlement agreement, entitled to enforce the designation. But neither case involved a claim by one of the parties to the dissolution nor addressed the propriety of bringing such a claim in a court other than the dissolution court. Fackler has not persuaded us that it would have been improper to join the Living Trust in an enforcement action in the Dissolution Court or that she would not have been able otherwise to enforce a judgment obtained from the Dissolution Court against the Living Trust.

*Id*. at 170.

[16] In her motion, Kelli argued, pursuant to *Fackler*:

> 14.    That the court issuing Kelli and George's dissolution decree has exclusive and continuing jurisdiction to interpret and adjudicate all property issues designated within and emanating from the dissolution decree. Fackler v. Powerl, [sic] 839 NE 2d 165 (S. Ct. Ind. 2005). [sic]

15.     That the alleged promissory note, the real property securing it, and the rights and obligations between George and Kelli regarding that real property and its debt are issues that "emanate" from the dissolution decree, which allocated the rights, property, and obligations of the parties.

16.     That this court did not issue the dissolution decree dissolving Kelli and George's marriage; and, therefore lacks subject matter jurisdiction over Horizon's collateral attack on the dissolution decree. *Id.*

17.     That the issues alleged by Horizon, and pursuant to its deal with George, concern the division of marital property and the division of marital obligations on debt secured by that marital property. *Id.*

18.     That Horizon's choice of this forum to litigate the rights and obligations of the parties to the marital dissolution according to the terms of the agreement Horizon reached in its agreement with George, is a collateral attack upon the dissolution decree entered by the dissolution court, which divided the property cited as security for the alleged promissory note upon which Horizon now sued. *Id.* At [sic] 168-169.

(App. at 44-45.)

[17]     *Fackler* does not control, because Horizon was not a party to the dissolution action and Kelli was liable for the Promissory Note regardless of the dissolution court's order. In *Hazifotis v. Citizens Federal Savings and Loan*, 505 N.E.2d 445, 447 (Ind. Ct. App. 1986), Citizens Federal Savings and Loan sued Hazifotis for nonpayment of a debt he thought he had transferred to another person when Hazifotis sold his interest in a business to his business partner, Thureanos. We noted:

As part of the transaction, Hazifotis intended that Thureanos would assume his outstanding mortgage explaining his desire to Dominic Cefali, president of Gary Federal [a subsidiary of Citizens Federal Savings and Loan]. However, there were no further discussions

because interest rates were too high. No paperwork was prepared to effect an assumption nor was Gary Federal's permission sought. When Hazifotis completed the sale he knew that there had been no transfer of his obligation. Thureanos never assumed the mortgage. Only the Gary Federal Board could approve an assumption and as a matter of policy, such an assumption would never release the original obligor.

[18] *Id*. at 447. We held: "The conveyance by a mortgagor of the mortgaged premises to another does not exonerate him from personal liability for the debt secured." *Id.*

[19] Additionally, the trial court did not err, as Horizon noted the "divorce decree itself acknowledges that Kelli remained liable on the Note until George refinanced the Note . . . Horizon never agreed to a refinancing of the Note. Horizon could not be ordered by the divorce court to refinance the Note." (App. at 75.) Finally, the terms of the Note Kelli signed indicated:

> CHOICE OF VENUE. If there is a lawsuit, I agree upon Lender's request to submit to the jurisdiction of the courts of LaPorte County, State of Indiana.

> \* \* \* \* \*

> GENERAL PROVISIONS….. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as a maker, guarantor, accommodation maker or endorser shall be released from liability.

(*Id*. at 75-76.) Accordingly, the trial court did not err when it denied Kelli's motion to dismiss because Horizon's action was properly filed in the trial court, as Horizon was not under the jurisdiction of the dissolution court, as Kelli asserted.

## 2. Summary Judgment

[20] We review summary judgment *de novo*, applying the same standard as the trial court. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). Drawing all reasonable inferences in favor of the non-moving party, we will find summary judgment appropriate if the designated evidence shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id*. A fact is material if its resolution would affect the outcome of the case, and an issue is genuine if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences. *Id.*

[21] The initial burden is on the summary-judgment movant to demonstrate there is no genuine issue of fact as to a determinative issue, at which point the burden shifts to the non-movant to come forward with evidence showing there is an issue for the trier of fact. *Id*. While the non-moving party has the burden on appeal of persuading us a summary judgment was erroneous, we carefully assess the trial court's decision to ensure the non-movant was not improperly denied his day in court. *Id*.

[22] Our summary judgment policies aim to protect a party's day in court. *Id*. While federal practice permits the moving party to merely show that the party carrying the burden of proof *lacks* evidence on a necessary element, we impose a more onerous burden -- to affirmatively negate an opponent's claim. *Id.* That permits summary judgment to "be precluded by as little as a non-movant's 'mere designation of a self-serving affidavit.'" *Id*. (quoting *Deuitch v. Fleming,*

746 N.E.2d 993, 1000 (Ind. Ct. App. 2001), *trans. denied*). Summary judgment is not a summary trial, and it is not appropriate just because the non-movant appears unlikely to prevail at trial. *Id*. at 1003-04. We "consciously err[] on the side of letting marginal cases proceed to trial on the merits, rather than risk short-circuiting meritorious claims." *Id*. at 1004.

[23] Horizon argued in its motion for summary judgment there was no genuine issue of material fact and it was entitled to judgment as a matter of law. It designated as evidence an Affidavit in Proof of Damages, and Affidavit of Non-Military Status, Affidavit of Attorney Fees, and Designation of Proof. After her Motion to Dismiss was denied, Kelli filed a response to Horizon's motion, reasserting lack of jurisdiction over the matter, and arguing:

> Horizon's action against Kelli constitutes an equitable foreclosure and foreclosure at law of her mortgage interest in Redwood Lane without offering her a recourse of redemption in violation of Indiana law, and in violation of the mortgage foreclosure notice provisions in Indiana Code 32-30-10.5, and the requirement of strict foreclosure. *Patterson v. Grace*, 661 NE 2d 580, 586 (Ind. Ct. App. 1996). [sic]

[24] (App. at 107.) Kelli designated as evidence the marital dissolution order attached to her Motion to Dismiss and a copy of the mortgage securing the promissory note.

[25] The trial court granted summary judgment for Horizon, finding "no genuine issues as to the material facts alleged in Horizon's Complaint and that Horizon is entitled to judgment as a matter of law." (*Id*. at 10.) The trial court ordered

Kelli to pay Horizon $190,644.96 "plus interest accruing after May 12, 2012." (*Id.*)[2]

[26]   On appeal, Kelli argues summary judgment was improper because she presented genuine issues of material fact in her response to Horizon's Motion for Summary Judgment. She incorporates her arguments regarding the Motion to Dismiss. Regarding her foreclosure argument, Kelli asserts her rights as a mortgagor under Ind. Code chapter 32-30-10.5 and argues Horizon did not properly inform her as required by Ind. Code § 32-30-10.5-8 that the debt owed to Horizon was in default. She asserts, "[t]he deal that Horizon brokered with George affects Kelli's rights under I.C. 32-30-10.5, and Horizon offered no evidence that it had complied with the notice provisions of the statute." (Br. of Appellant at 20.)

[27]   However, Ind. Code chapter 32-30-10.5 does not apply to a promissory note, and the action filed against Kelli was not a foreclosure action, as evidenced by the cause number filed with the trial court, which "indicates that the action was filed as a civil collection matter (CC) and not a mortgage foreclosure (MF)." (Br. of Appellant at 14.)

---

[2] Kelli filed a Motion to Correct Error, in which she argued the summary judgment was error because the order was not dispositive of all the issues before the court; it did not include judgment on Kelli's counterclaim, the court's order prejudged her counterclaim, and the court did not have jurisdiction over the matters before it. Kelli does not argue the trial court erred when it denied her Motion to Correct Error, and our standard of review for appeal of a Motion to Correct Error directs us to consider the underlying order, here the summary judgment for Horizon. *See In re Paternity of H.H.*, 879 N.E.2d 1175, 1177 (Ind. Ct. App. 2008) (review of motion to correct error includes review of underlying order).

[28] Horizon was not required to file foreclosure proceedings against Kelli, and could instead sue on the note and obtain a judgment. *See National City Bank of Indiana v. Morris*, 717 N.E.2d 934, 939 n.2 (Ind. Ct. App. 1999) ("Of course, a mortgagee is not obligated to seek foreclosure. She may sue on the note and obtain a judgment."), *trans. denied*. The collection of the promissory note is not governed by Ind. Code chapter 32-30-10.5 because that chapter applies only to first mortgages, and the promissory note was a second mortgage on the Redwood Property. Ind. Code § 32-30-10.5-5 defines mortgage as a "loan" or a:

> consumer credit sale; that is or will be used by the debtor primarily for personal, family or household purposes and that is secured by a mortgage (or other consensual security interest) that constitutes a first lien on a dwelling or on residential real estate upon which a dwelling is constructed or intended to be constructed.

[29] Finally, Ind. Code chapter 32-30-10.5 does not apply if "the mortgage is secured by a dwelling that is not occupied by the debtor as the debtor's primary residence." Ind. Code § 32-30-10.5-8(e). Kelli was not living in the Redwood Property when Horizon filed its claim, as she had been ordered to vacate the real estate thirty days after the divorce court entered its order on May 18, 2011.[3]

---

[3] Horizon also argues the trial court properly granted summary judgment in favor of Horizon with regard to Kelli's counterclaim alleging constructive fraud. As Kelli makes no argument regarding that portion of the trial court's order, we do not address it.

[30] As Kelli's response to Horizon's motion for summary judgment did not raise genuine issues of material fact, and her assertions of the law are incorrect, the trial court did not err when it granted summary judgment in favor of Horizon.

[31] Affirmed.

Riley, J., and Robb, J., concur.